**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**
Bankruptcy Judge Thomas B. McNamara

| | |
|---|---|
| In re:<br><br>ALLAN ANTHONY JOJOLA and<br>CHRISTINE PATRICIA JOJOLA,<br><br>Debtors. | Bankruptcy Case No. 25-13587 TBM<br>Chapter 7 |
| JAMES L. RINER,<br><br>Plaintiff,<br><br>v.<br><br>ALLAN ANTHONY JOJOLA,<br><br>Defendant. | Adv. Pro. No. 25-1275 TBM |

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS**

## I.      Introduction.

This case involves a numismatic relationship gone awry.  The Plaintiff, James L. Riner (the "Plaintiff"), asserts that he and the Debtor-Defendant, Allan Anthony Jojola (the "Defendant"), share a common interest: coin collecting (including buying and selling coins).  Per the Plaintiff, he entrusted ten valuable coins to the Defendant to sell for the Plaintiff's benefit.  The Plaintiff provided a list of prices (the "Price List") "for which [the Plaintiff] would agree to sell each respective coin."  The Defendant allegedly agreed to safekeep the coins, solicit offers, sell the coins at or above the amounts on the Price List (if expressly approved by the Plaintiff), and turn over the proceeds to the Plaintiff.  In return, the Plaintiff allegedly agreed to pay the Defendant amounts received from sales to the extent coins were sold for values above the Price List.  According to the Plaintiff, the Defendant lied about the status of sales, sold the ten coins (without timely informing the Plaintiff), and absconded with all the proceeds.  Later, the Plaintiff sued the Defendant in Colorado State Court for damages.

1

But, then, the Defendant filed for protection under Chapter 7 of the Bankruptcy Code.[1]  Subsequently, the Plaintiff commenced this Adversary Proceeding against the Defendant asserting that the Debtor is indebted to the Plaintiff and that such debt is nondischargeable under Sections 523(a)(2)(A), (a)(4), and (a)(6).  All the foregoing is prelude to the current and more discreet issue: service of process.  The Defendant (who has actual notice of the pendency of this Adversary Proceeding) filed a "Motion to Dismiss Adversary Proceeding Pursuant to Fed. R. Civ. P. 4(m) and Fed. R. Bankr. P. 7004(e)" (Docket No. 17, the "Motion to Dismiss")[2] contending that this Adversary Proceeding should be dismissed because service of process was insufficient.  Not surprisingly, the Plaintiff contests dismissal.  (Docket No. 18, the "Opposition").  For the reasons set forth below, the Court denies the Motion to Dismiss.

## II.      Jurisdiction and Venue.

This Court has subject matter jurisdiction to enter judgment on the Motion to Dismiss and Opposition pursuant to 28 U.S.C. § 1334.  This Adversary Proceeding is a core proceeding under 28 U.S.C. §§ 157(b)(2)(I) (determinations as to the dischargeability of particular debts) and (b)(2)(O) (other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor creditor relationship).  Furthermore, no party has contested the Court's exercise of jurisdiction and entry of judgment on the Motion to Dismiss and Opposition.  So, the Court finds that it has jurisdiction to enter judgment on the Motion to Dismiss and Opposition.  No party has challenged venue in the District of Colorado with respect to this Adversary Proceeding.  Thus, the Court finds that venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## III.      Procedural and Factual Background.

### A.      The Main Bankruptcy Case.

On June 12, 2025, Debtor-Defendant Allan A. Jojola, acting through his legal counsel, filed a joint Petition for bankruptcy protection with his wife, Christine Patricia Jojola, under Chapter 7 of the Bankruptcy Code thereby initiating the bankruptcy case: *In re Jojola,* Case No. 25-13587 TBM (Bankr. D. Colo.) (the "Main Case").[3]  The Defendant's legal counsel in the Main Case is James Lee Aab (the "Debtor's Counsel").  The Debtor's Counsel is a registered electronic filer for the CM/ECF system.  He filed the Petition and ancillary materials electronically using his e-mail address: jlaab@aol.com.[4]

---

[1]      11 U.S.C. § 101 *et seq.*  Unless otherwise indicated, all references to "Section" are to Sections of the Bankruptcy Code.

[2]      Unless otherwise indicated, the Court will refer to documents from the CM/ECF docket for this Adversary Proceeding, *Riner v. Jojola (In re Jojola),* Adv. Pro. No. 25-1275 TBM (Bankr. D. Colo.) using the convention: "Docket No. __."

[3]      Main Case Docket No. 1.  Unless otherwise indicated, the Court will refer to documents from the CM/ECF docket for the main Bankruptcy Case, *In re Jojola,* Case No. 25-13587 TBM (Bankr. D. Colo.), using the convention: "Main Case Docket No. __."

[4]      *Id.*

The Main Case proceeded in unremarkable fashion.  On November 6, 2025, the Court entered an "Order of Discharge," generally discharging the Debtors from pre-petition debt.[5]  Later, the Chapter 7 Trustee sold the Debtors' principal residence.[6]

**B.      The Adversary Proceeding.**

**1.      The Complaint.**

Meanwhile, on September 19, 2025 (prior to the entry of the Order of Discharge), the Plaintiff commenced this Adversary Proceeding against the Defendant by filing a "Complaint" (the "Complaint").[7]  The Complaint was filed on the statutory deadline for actions seeking nondischargeability determinations under Section 523.  In the Complaint, the Plaintiff asserted, in relevant part:

13.      Mr. Riner met Mr. Jojola through his coin collecting hobby and has previously bought and sold items with Defendant.
. . .

15.      . . . Mr. Riner presented ten (10) coins to Mr. Jojola along with a list that described each coin with a corresponding amount or dollar range next to each coin's description representing the amount or dollar range for which Mr. Riner would agree to sell each respective coin.
. . .

17.      Some of the coins exceeded $30,000 in value.

18.      Mr. Jojola agreed to assist Mr. Riner in selling the coins.

19.      Mr. Jojola agreed to take possession of the coins to market them for sale and solicit offers for Mr. Reiner to consider and approve based on Mr. Riner's discretion.

20.      Mr. Jojola informed Mr. Riner that Defendant would keep the coins secure in his safe while he possessed them.

21.      Under their arrangement, and as compensation for his services, Mr. Jojola would be permitted to keep any excess amounts beyond the amounts contained on the list as a fee.
. . .

30.      In January 2022, Mr. Riner contacted Mr. Jojola to let him know that he wanted his coins returned.  Mr. Jojola misrepresented to Mr.

---

[5]      Main Case Docket No. 36.
[6]      Main Case Docket No. 59 and 61.
[7]      Docket No. 1.

Riner that he still had the coins and indicated he had some interested buyers.

. . .

32.    On September 2023, Mr. Riner called Mr. Jojola to request his coins back . . . [Mr.] Jojola informed Mr. Riner that he had sold the coins.

. . .

41.    . . . Mr. Jojola had sold all ten on Mr. Roner's coins without paying Mr. Riner anything.

. . .

44.    Mr. Jojola has indicated that he spent the proceeds of his sale of Mr. Riner's coins and used such proceeds for his own purposes.

Based on the foregoing alleged facts, the Plaintiff advanced three nondischargeability claims against the Defendant: (1) under Section 523(a)(2)(A) (based on false representations); (2) under Section 523(a)(4) (based on embezzlement and larceny); and (3) under Section 523(a)(6) (based on willful and malicious injury).[8]

When the Plaintiff filed the Complaint initiating this Adversary Proceeding (on September 19, 2025), the Plaintiff automatically filed the Complaint in the Main Case too.[9]  As a result, the Complaint was sent electronically to the Debtor's Counsel in the Main Case on September 19, 2025.[10]

### 2.    Service of Process.

What followed is a perplexing series of attempts by the Plaintiff to properly serve the Defendant with legal process.  At the Plaintiff's request, on September 19, 2025 (the same day the Complaint was filed), the Clerk of Court issued a "Summons in an Adversary Proceeding" to the Plaintiff (the "First Summons").[11]  More than a month passed without the Plaintiff filing a proof of service showing service of the First Summons and Complaint on the Defendant.  So, on October 28, 2025, the Court issued an "Order to Show Cause," ordering that:

> . . . on or before November 4, 2025, the Plaintiff shall file with the Court either a proof of service of the [First] Summons and Complaint in compliance with Fed. R. Bankr. P. 7004(e); a request for issuance of an alias summons if Plaintiff did not serve the Summons and Complaint; or shall

---

[8]    *Id*.
[9]    Main Case Docket No. 31.
[10]    *Id*. at Receipt Display Tab (showing that the Debtor's Counsel was sent notice twice at jlaab@aol.com).
[11]    Docket No. 2.

4

otherwise show cause in writing why this adversary
proceeding should not be dismissed . . . .[12]

On November 3, 2025, the Plaintiff filed an "Affidavit of Service" (the "First Proof of Service").[13]  The First Proof of Service indicated that a process server (Andrew Scott) served the Defendant with the First Summons and Complaint on October 30, 2025, by personal service on the Defendant at 1600 Pinyon Drive, Castle Rock, Colorado.

Thereafter, the Defendant, acting *pro se*, filed a "Motion to Quash Service of Summons for Untimely Service Under Bankruptcy Rule 7004(e)" (the "First Motion to Quash").[14]  (The Debtor's Counsel in the Main Case has not appeared in this Adversary Proceeding.)  In the First Motion to Quash, the Defendant argued, among other things, that the Plaintiff's October 30, 2025, attempted service of the Summons and Complaint on the Defendant was "stale and ineffective" because the First Summons was not served within the seven-day period required by Fed. R. Bankr. P. 7004(e).  The Plaintiff opposed the First Motion to Quash.[15]  On December 31, 2025, the Court issued its "Order Granting [First] Motion to Quash Service of Summons" (the "Order Quashing Service").[16]  The Court determined that "the Plaintiff effectively admits that he served the Defendant with a stale summons [under Fed. R. Bankr. P. 7004(e)."  So, the Court quashed the service of the First Summons.

Meanwhile, the Plaintiff, likely realizing the obvious insufficiency of service of process of the First Summons, caused the Clerk of Court to issue an alias summons on December 13, 2025 (the "Second Summons").[17]  Months later, on February 2, 2026, the Plaintiff filed a "Proof of Service" (the "Second Proof of Service")[18] certifying that the Plaintiff mailed the Second Summons and Complaint to the Defendant at 1600 Pinyon Drive, Castle Rock, Colorado "via First Class Mail" on December 16, 2025 (*i.e.,* a few days after the issuance of the Second Summons).  The Court does not know why the Plaintiff delayed in filing the Second Proof of Service from December 16, 2025, to February 2, 2026.  The Second Proof of Service does not indicate that the Plaintiff served the Summons and Complaint on the Debtor's Counsel in the Main Case as required by Fed. R. Bankr. P. 7004(g).

On January 12, 2026, the Defendant filed a "Motion to Quash Second Service of Summons for Untimely Service Under Bankruptcy Rule 7004(e) and for Dismissal" (the "Second Motion to Quash") challenging the sufficiency of service on the Debtor's Counsel in the Main Case under Fed. R. Bankr. P. 7004(g).[19]  The Second Motion to Quash included an "Affidavit of Debtor's Counsel" (the "Affidavit"), dated January 8, 2026, from the Debtor's Counsel attesting that the Debtor's Counsel had not "received

---

[12]     Docket No. 4.
[13]     Docket No. 6.
[14]     Docket No. 7.
[15]     Docket No. 9.
[16]     Docket No. 10.
[17]     Docket No. 8.
[18]     Docket No. 15.
[19]     Docket No. 12.

5

any communications or documents, either electronically or in paper form, from Christopher T. Leach or any member of his law firm concerning either the main bankruptcy case or the Adversary case filed by Mr. Leach on September 19, 2025."[20] However, notably, the Affidavit does not denying that the Debtor's Counsel was sent the Complaint in the Main Case on September 19, 2025 *through the CM/ECF system*.[21] The Plaintiff opposed the Second Motion to Quash.[22]

Meanwhile, the Plaintiff followed a "third time's the charm" strategy and caused the Clerk of Court to issue another alias summons on January 30, 2026 (the "Third Summons").[23]  The Third Summons was issued more than 90 days after the Complaint was filed on September 19, 2025.  On February 2, 2026, the Plaintiff filed a "Proof of Service" (the "Third Proof of Service")[24] certifying that the Plaintiff mailed the Third Summons and Complaint to: (1) to the Defendant at 1600 Pinyon Drive, Castle Rock, Colorado "via First Class Mail" on January 30, 2026; and (2) to the Debtor's Counsel on January 30, 2026.

Before the Court could rule on the Second Motion to Quash, the Defendant filed the Motion to Dismiss.  Then, the Defendant opposed dismissal by filing the Opposition. The Court construes the Motion to Dismiss as effectively superseding the Second Motion to Quash.

None of the foregoing is disputed.  To the extent that the Court's identification of the foregoing Procedural Background is factual in nature (that is identifying what occurred in the Main Case and this Adversary Proceeding), the Court incorporates the foregoing as the Court's factual findings.

## IV.   Legal Analysis.

### A.   Legal Standard.

In the Motion to Dismiss, the Defendant (acting *pro se*) argues that service of process was insufficient so this Adversary Proceeding should be dismissed.  The Defendant references Fed. R. Bankr. P. 7004(a)(1) and (e) and Fed. R. Civ. P. 4(m) in support of his position.

Understanding the service issues presented in this dispute requires reference to a panoply of procedural rules.  Fed. R. Bankr. P. 7004 governs "process" including "issuing and serving a summons and complaint" in an adversary proceeding.  Fed. R. Bankr. P. 7004 starts by incorporating Fed. R. Civ. P. 4(a), (b), (c)(1), (d)(5), (e-j), (l) and (m) "in an adversary proceeding."  Those rules apply in all federal civil litigation:

---

[20]    *Id.*
[21]    *See* Main Case Docket No. 31 Receipt Display Tab showing multiple notices of the Complaint through the CM/ECF System.
[22]    Docket No. 16.
[23]    Docket No. 13.
[24]    Docket No. 14.

bankruptcy-oriented or not.  Fed. R. Civ. P. 4(a) lists the contents required for a summons while Fed. R. Civ. P. 4(b) governs the procedure for the Clerk of Court to issue a summons.  Fed. R. Civ. P. 4(c)(1) deals with "service" and states:  "[a] summons must be served with a copy of the complaint.  The plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m) . . . ."  Fed. R. Civ. P. 4(d)(5) and (e-j) are not germane to the Motion to Dismiss because those sections deal with waiving service and general rules of service on the United States, individuals, incompetent persons, corporations, partnerships, associations and foreign, state, or local governments.  But, the Plaintiff does not contend it served process under such provisions.  Fed. R. Civ. P. 4(l) mandates that "proof of service must be made to the court" by affidavit.  Finally, Fed. R. Civ. P. 4(m) (which is part of the basis for the Motion to Dismiss) sets an outer limit for service of process:

> If a defendant is not served within 90 days after the complaint is filed, the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Again, all of the foregoing rules apply generally in federal civil litigation.  But, Fed. R. Bankr. P. 7004 establishes additional procedures which are unique to bankruptcy adversary proceedings.  Most notably, Fed. R. Bankr. P. 7004(b), titled "Service by Mail as an Alternative," allows liberal nationwide service of process by mail in bankruptcy adversary proceedings and states:

> . . . in addition to the methods of service authorized by Fed. R. Civ. P. 4(e)-(j), a copy of a summons and complaint may be served by first-class mail . . . within the United States on: (1) an individual . . . by mailing the copy to the individual's dwelling or usual place of abode or where the individual regularly conducts a business or profession.

Another rule, Fed. R. Bankr. P. 7004(e), governs timing for service by delivery or mail:

> A summons and complaint served by delivery . . . must be served within 7 days after the summons issued.  If served by mail, they [summons and complaint] must be deposited in the mail within 7 days after the summons is issued.  If a summons is not timely delivered or mailed, a new summons must be issued.

Finally, as relevant to this Adversary Proceeding, Fed. R. Bankr. P. 7004(g) contains a unique bankruptcy protection for debtors and states:

7

> If, when served, a debtor is represented by an attorney, the attorney must also be served by an means authorized by Fed. R. Civ. P. 5.

**B.    Application.**

**1.    Defendant's Argument.**

In the Motion to Dismiss, the Defendant requests dismissal of the Adversary Proceeding with prejudice "pursuant to Fed. R. Civ. P. 4(m) and Fed. R. Bankr. P. 7004(e)."[25]  The Defendant's argument is extremely cursory.  He contends only:

> IV.    Argument.
>
> A.    Plaintiff Failed to Effect Timely Service under Rule 4(m).
>
> More than 90 days elapsed from filing the Complaint without proper service.  Plaintiff was already afforded an opportunity to cure defects following this Court's December 31, 2025 order granting Defendant's Motion to Quash.  Continued failure demonstrates lack of diligence and good cause.  Under Rule 4(m), dismissal is mandatory absent good cause.
>
> B.    Plaintiff Failed to Comply with Fed. R. Bankr. P. 7004(e).
>
> Fed. R. Bankr. P. 7004(e) requires services within seven days of issuance of the summons.  The alias summons issued December 13, 2025 was not property served within the required timeframe.  Service outside the seven-day window renders the summons ineffective and requires reissuance.  Courts hold that stale summons cannot confer personal jurisdiction.[26]

Insufficiency of service of process is a defense to the Complaint pursuant to Fed. R. Civ. P. 12(b)(5), as incorporated by Fed. R. Bankr. P. 7012.

**2.    The Defendant Was Properly Served with the Second Summons and Complaint.**

As set forth above, the Plaintiff did not properly serve the First Summons on the Defendant.  The First Summons was issued on September 19, 2025.  Per Fed. R. Civ.

---

[25]    Docket No. 17.
[26]    *Id*. at 2.

8

P. 7004(e), the First Summons and Complaint were required to be served on the Defendant within seven days after the issuance of the First Summons (*i.e.* by September 26, 2025).  But the Plaintiff did not do so.  As set forth in the First Proof of Service, the Plaintiff served the First Summons and Complaint by personal service on the Defendant on October 30, 2025.  By that time, the First Summons was stale and ineffective.  And, "[s]ervice of a stale summons is no service at all."  *Menges v. Menges (In re Menges)*, 337 B.R. 191, 194 (Bankr. N.D. Ill. 2006).  Accordingly, the Court entered its Order Quashing Service of the First Summons.

However, the Plaintiff rectified its sloppy error with respect to the Defendant.  The Plaintiff caused the Second Summons to issue on December 13, 2025.  Per the Second Proof of Service, the Plaintiff served the Second Summons and Complaint on the Defendant by mail on December 16, 2025.  Such service complied with Fed. R. Civ. P. 7004(b) and (e) in that service on the Defendant was accomplished within seven days of issuance of the Second Summons.  And, the service of the Second Summons and Complaint also comported with Fed. R. Civ. P. 4(m) in that service on the Defendant was completed "within 90 days after the complaint is filed . . . ."  The Defendant has not presented any factual or legal basis otherwise.

### 3. Service on the Debtor's Counsel Was Insufficient.

The Motion to Dismiss does not mention Fed. R. Bankr. P. 7004(g) as a ground for dismissal.  Accordingly, the Defendant has waived any Fed. R. Bankr. P. 7004(g) issues.  However, since the Defendant discussed Fed. R. Bankr. P. 7004(g) in the Second Motion to Quash and Fed. R. Bankr. P. 7004(g) features in the Opposition, the Court delves deeper.

Recall that Fed. R. Bankr. P. 7004(g) is a service feature unique to bankruptcy adversary proceedings and requires:

> If, when served, a debtor is represented by an attorney, the attorney must also be served by an means authorized by Fed. R. Civ. P. 5.

The unusual nature of Fed. R. Bankr. P. 7004(g), as juxpatosed with standard federal civil litigation service requirements "has led some attorneys — even those versed in bankruptcy procedure — to fail in their efforts at good service." *Hursey v. Long (In re Long),* 677 B.R. 77, 94 (Bankr. S.D. Ohio 2026) (quoting *Moss. v. Pepin (In re Pepin)*, 619 B.R. 266, 270 (Bankr. D.N.M. 2020)).

Fed. R. Bankr. P. 7004(g) was devised "to avoid the possibility that a Debtor, represented by counsel in the bankruptcy case, could be served with process in an adversary proceeding, without counsel's knowledge, setting up conditions for a default judgment if the Debtor did not respond." *Cutuli v. Elie (In re Cutuli)*, 389 F. Supp.3d 1051, 1056 (M.D. Fla. 2019) (quoting *In re Ellis*, 2012 WL 4904540, at *2 (Bankr. D. Kan. Oct. 15, 2012)).  Further, the Fed. R. Bankr. R. 7004(g) Advisory Committee Notes

provide that "the rule [7004(g)] is amended to require service on the debtor's attorney whenever the debtor is served with a summons and complaint."

At the commencement of this Adversary Proceeding, the Defendant was represented in the Main Case by the Debtor's Counsel.  The Debtor's Counsel received notice of the Complaint on the date it was filed: September 19, 2025.[27]  Such notice was effected electronically through the CM/ECF system because the Debtor's Counsel was a registered electronic used who filed the Petition electronically and represented the Debtor in the Main Case.

But, irrespective of notice, the Plaintiff did not serve the First Summons and Complaint on the Debtor's Counsel as required by Fed. R. Bankr. P. 7004(g).  And, for reasons inexplicable to the Court, the Plaintiff did not serve the Second Summons and Complaint on the Debtor's Counsel either.  Instead, the Plaintiff waited until January 30, 2026 to request that the Clerk of Court issue the Third Summons.[28]  Per the Third Proof of Service, the Plaintiff served the Third Summons and Complaint on the Debtor's Counsel by mail on January 30, 2026.[29]  But, by that time, the time for service of process on the Debtor's Counsel had expired pursuant to Fed. R. Civ. P. 4(m) which requires completion of service "within 90 days after the complaint is filed . . . ."  So, the Plaintiff's January 30, 2026, service of the Third Summons and Complaint on the Debtor's Counsel was ineffective and insufficient.

The Court emphasizes the importance of timely service of process on attorneys for debtors in adversary proceedings.  The procedural rule is not some sort of make-work.  Instead, it is an important protection for bankruptcy debtors.  And, "[s]ervice upon the debtor without service upon its attorney or vice-versa is insufficient; both must be served." *Hursey v. Long (In re Long),* 677 B.R. 77, 94 (Bankr. S.D. Ohio 2026) (quoting Richard Levin & Henry J. Sommer, 10 COLLIER ON BANKRUPTCY ¶ 7004.04 (Lexis/Nexis 16th ed. 2026)); *see also Dreier v. Love* (*In re Love*), 232 B.R. 373, 377 (Bankr. E.D. Tenn. 1999) ("Rule 7004(b)(9) [now Fed. R. Bankr. P. 7004(h)] unambiguously provides that service of process upon a debtor is not sufficient unless both the debtor and his attorney are served with the summons and a copy of the complaint."); *First Heritage Credit of Tenn., LLC v. Johnson (In re Johnson)*, 2014 WL 61415, at *1 (E.D. Tenn. Jan. 7, 2014) (same).  Thus, "service of process on a Debtor is insufficient unless both the debtor and his attorney are served with the summons and complaint."  *Yesh Diamonds, Inc. v. Yashaya (In re Yashaya)*, 403 B.R. 278, 283 (Bankr. E.D.N.Y. 2009), aff'd, *Yesh Diamonds, Inc. v. Yashaya*, 2010 WL 3851993 (E.D.N.Y. Sept. 27, 2010) (citing *Moll v. Parker (In re Parker)*, 2007 WL 2815561 at *1 (Bankr. E.D. Tenn. Sept.25, 2007)).

It is true that the Debtor's Counsel does not represent the Defendant in this Adversary Proceeding.  But that does not matter in assessing whether service of process was proper.  If an attorney represents the debtor in the main bankruptcy case, but not the adversary proceeding, the plaintiff still must serve the debtor's attorney.

---

[27]      Main Case Docket No. 31.

[28]      Docket No. 13.

[29]      Docket Nos. 13 and 14.

10

*Cutuli*, 389 F. Supp.3d at 1059; *Friesigner v. Thomas (In re Thomas)*, 2025 WL 1891803 (Bankr. S.D. Ohio Jul. 7, 2025) ("the court does not read this rule [Fed. R. Bankr. P. 7004(g) to only apply if the debtor's attorney files a notice of appearance in an adversary proceeding.)  This is because Fed. R. Bankr. P. 7004(g) "asks only whether the debtor has counsel, not the scope of counsel's engagement or what counsel may plan on doing in the future." *Cutuli*, 389 F. Supp.3d at 1059 (quoting *In re Shumate*, 2010 Bankr. LEXIS 698, at *2 (N.D. Ind. Feb. 12, 2010)).  Similarly, it does not matter that the Defendant and the Debtor's Counsel had actual notice of the Complaint when assessing whether service of process was proper.  *Johnson*, 2014 WL 61415, at * 2 ("Even if the Defendant's attorney received electronic notice of the Complaint . . ., actual knowledge of the adversary proceeding is not a substitution for service of process, nor does it cure 'technically defective service of process' . . . .).

The Court finds that the Plaintiff, as a strict technical matter, did not properly serve the Debtor's Counsel under Fed. R. Bankr. P. 7004(g) with a summons (whether the First, Second, or Third Summons) and the Complaint within the 90-day window established by Fed. R. Civ. P. 4(m).  So, service of process on the Debtor's Counsel was insufficient.  As set forth below, in the Opposition, the Plaintiff effectively acknowledges as much.

### 4.  An Extension of Time for the Plaintiff to Effect Service of Process Is Appropriate under Fed. R. Civ. P. 4(m).

In the Opposition, the Plaintiff stated:

> While the second summons was not served on Defendant's Chapter 7 counsel contemporaneously with service on Defendant, Plaintiff diligently obtained a new summons and served it on Defendant's Chapter seven counsel by mailing it on January 30, 2026 . . . .  Because service was effected properly on Defendant within 90 days and only service on his Chapter 7 counsel was outside the 90 day period, an extension is warranted to allow Plaintiff to effect service on both the Defendant and his counsel.  As service on both was accomplished through mail on January 30, 2026, no further extension is necessary.[30]

Plaintiff's request is based on Fed. R. Civ. P. 4(m).  That provision sets an outer limit for service of process but allows for the possibility of appropriate extensions:

> If a defendant is not served within 90 days after the complaint is filed, the court . . . must dismiss the action without prejudice against that defendant or order that service be made within a specified time.  But if the plaintiff shows

---

[30]     Docket No. 18 at 4.

11

good cause for the failure, the court must extend the time for
service for an appropriate period.

Fed. R. Civ. P. 4(m).

The key appellate precedent governing requests for extension of time to complete service under Fed. R. Civ. P. 4(m) is *Espinoza v. U.S.*, 52 F.3d 838, 842 (10th Cir. 1995). The appellate court established a two-stage process:

> [D]istrict courts should proceed under the new rule [Fed. R. Civ. P. 4(m)] in the following manner:  The preliminary inquiry to be made under Rule 4(m) is whether the plaintiff has shown good cause for the failure to timely effect service. In this regard, district courts should continue to follow the cases in this circuit that have guided that inquiry.  If good cause is shown, the plaintiff is entitled to a mandatory extension of time.  If the plaintiff fails to show good cause, the district court must still consider whether a permissive extension of time may be warranted.  At that point the district court may in its discretion either dismiss the case without prejudice or extend the time for service.

*Espinoza*, 52 F.3d at 841.  *See also Womble v. Salt Lake City Corp.*, 84 Fed. Appx. 18, at *1 (10th Cir. 2003) (table) (same); *Dahn v. U.S.*, 77 F.3d 492, at *1 (10th Cir. 1996) (table) (same).

### a.   The Plaintiff Did Not Establish Good Cause for an Extension of Time to Effect Proper Service.

The first step in the Fed. R. Civ. P. 4(m) analysis is to determine whether the Plaintiff has established good cause.  *See Espinoza,* 52 F.3d at 841.  The phrase "good cause" is not defined in Fed. R. Civ. P. 4(m).  However, within the bounds of the Tenth Circuit, good cause under Fed. R. Civ. P. 4(m) is interpreted narrowly, "rejecting inadvertence or neglect as 'good cause' for untimely service." *Broitman v. Kirkland (In re Kirkland)*, 86 F.3d 172, 174 (10th Cir. 1996).  *See also Elide Fire USA Corp. v. Auto Fire Guard, LLC*, 2022 WL 672485, at *3 (D. Colo. Mar. 7, 2022) ("The Tenth Circuit has interpreted 'good cause' narrowly . . . .") (quoting *Blackmon v. U.S.D. 259 Sch. Dist.,* 769 F.Supp.2d 1267, 1275 (D. Kan. 2011)).  The narrow interpretation dictates that "inadvertence or negligence alone do not constitute 'good cause' for failure of timely service.  Mistake of counsel or ignorance of the rules also usually do not suffice." *Kirkland*, 86 F.3d at 176 (citing *Putnam v. Morris*, 833 F.2d 903, 905 (10th Cir.1987)); *Elide Fire*, 2022 WL 672485 at *3 (similar).  As a result, "[u]nexplained assertions of miscalculation do not constitute 'good cause.'" *Kirkland*, 86 F.3d at 176.  Further, the "absence of prejudice [to the defendant] alone does not constitute good cause." *Id*. *See also Despain v. Salt Lake Metro Gang Unit*, 13 F.3d 1436, 1439 (10th Cir. 1994) (same).  And, critically, "[t]he plaintiff who seeks to rely on the good cause provision

12

must show *meticulous efforts to comply with the rule*."  *Kirkland*, 86 F.3d at 176 (emphasis added).  *See also Despain*, 13 F.2d at 1438 (same).

The narrow interpretation of "good cause" is well-illustrated by *Despain*, 13 F.3d 1436.  In that binding appellate decision, the Tenth Circuit determined that the plaintiffs had failed to serve the proper parties.  The plaintiffs requested an extension to effect service of process.  However, the Tenth Circuit concluded that good cause was not shown even though: (1) the statute of limitations had run; (2) the plaintiff's counsel had misinterpreted the applicable rule of procedure; (3) the plaintiffs contended that the defendants would not be prejudiced by an extension; and (4) the defendants may have had actual notice of the lawsuit.  *Id*.  *See also Espinoza*, 52 F.3d at 841 (characterizing *Despain*).  The long and short of it is that showing good cause under Fed. R. Civ. P. 4(m) is a "high hurdle."  *Murphy v. City of Tulsa*, 556 Fed. Appx. 664, 668 (10th Cir. 2014) (unpublished).

With the foregoing standards in mind, the Court turns to the Plaintiff's position.  In the Opposition, the Plaintiff did not present a cogent good faith argument.  Instead, as best the Court understands, the Plaintiff only contends that the Defendant and the Debtor's Counsel have actual notice of the Complaint, the Defendant will not be prejudiced, and the Plaintiff tried to "cure" its multiple service of process deficiencies.

With respect to alleged actual notice, binding appellate precedent dictates that "actual notice is not equivalent to a showing of good cause for purposes of Rule 4[m]."[31] *Despain*, 13 F.3d at 1439.  Put another way:

> The relevant standard under Rule 4[m] is not whether defendants do or do not have 'actual knowledge' of a suit in which they are named.  The standard is whether plaintiffs have shown 'good cause' for their failure [to properly serve a defendant or defendants].

*Id*. (quoting *Eggink v. City of N.Y. Human Res. Admin.*, 126 F.R.D. 32, 33 (S.D.N.Y. 1989)).  Therefore, the Plaintiff's actual notice argument fails.

The Plaintiff's plea to alleged lack of prejudice also fails.  Per the Tenth Circuit "[t]he absence of prejudice to the defendants, by itself, does not equate to good cause on the part of the plaintiffs."  *Despain,* 13 F.3d at 1439.  *See also Murphy*, 556 Fed. Appx. 668 ("We [the Tenth Circuit] . . . have deemed irrelevant the fact that no prejudice inured to the defendants" in construing good cause under Fed. R. Civ. P. 4(m)).  And,

---

[31]   The *Despain* decision involved Fed. R. Civ. P. 4(j).  However, Fed. R. Civ. P. 4(j) was "amended and recodified in 1993 and is now Fed. R. Civ. P. 4(m)."  *Espinoza*, 52 F.3d at 840.  The Tenth Circuit has confirmed that "this court's cases that interpret Rule 4(j) remain unaffected insofar as they provide guidance in determining good cause has been shown [under Fed. R. Civ. P. 4(m)]."  *Id*. at 841.  Accordingly, in this Order, whenever a judicial decision refers to "Fed. R. Civ. P. 4(j)", the Court uses a bracket to note the new rule as "Fed. R. Civ. P. 4[m]."

besides, the Plaintiff has done nothing but assert lack of prejudice in a conclusory fashion with no meaningful explanation.").

That leaves the Plaintiff's contention that it acted diligently in trying to cure the service of process deficiencies.  The Court disagrees.  For more than a month after the Plaintiff commenced this Adversary Proceeding, the Plaintiff took no steps to effect proper service of process.  The Plaintiff's failure to act prompted the Court to issue and an "Order to Show Cause."[32]  Although the Plaintiff eventually woke up, the Plaintiff's attempted service of the First Summons and Complaint was an ineffective farce because the First Summons was stale.  And, even though the Fed. R. Bankr. P. 7004(g) issue was raised by the Defendant, the Plaintiff took no steps to serve the Debtor's Counsel under Fed. R. Bankr. P. 7004(g) until after expiration of the 90-day Fed. R. Civ. P. 4(m) deadline.  The Plaintiff's negligent failure to comply with the Federal Rules of Civil Procedure and Federal Rules of Bankruptcy Procedure surely does not constitute good cause.

An extension of time to effect proper service of process for good cause under Fed. R. Civ. P. 4(m) requires that the movant demonstrate "meticulous efforts to comply" with the applicable service requirements.  *Kirkland*, 86 F.3d at 176; *Despain*, 13 F.2d at 1438.  The Plaintiff did not show such meticulous efforts.  Accordingly, the Court finds that the Plaintiff did not meet his burden to show good cause for an extension of time pursuant to Fed. R. Civ. P. 4(m).

### b.      A Permissive Extension of Time to Effect Proper Service Is Warranted.

Although the Plaintiff did not meet his burden to show good cause, that is not the end of the Fed. R. Civ. P. 4(m) inquiry.  Even in the absence of good cause, the Court still must consider whether to grant a permissive extension of time.  *Henderson v. U.S.*, 517 U.S. 654, 658 n. 5 (1996) (Fed. R. Civ. P. 4(m) "permits a district court to enlarge the time for service 'even if there is no good cause shown.'); *Espinoza*, 52 F.3d at 841 ("[U]nder the new rule [Fed. R. Civ. P. 4(m)] a plaintiff who has failed to show 'good cause' for a mandatory extension of time may still be granted a permissible extension of time within the district court's discretion.").

The Tenth Circuit has noted a few factors which should guide the Court in considering a permissive extension of time: (1) whether the applicable statute of limitations would bar the refiled action; (2) policy considerations regarding service of process on the United States given the "complex nature of the requirements of Fed. R. Civ. P. 4(i)."  *Espinoza*, 52 F.3d at 842.  Other courts have listed some additional relevant factors including the danger of prejudice and the length of delay.  *Elide Fire*, 2022 WL 672485, at *5.

---

[32]      Docket No. 4.

Viewing the Opposition charitably, the Plaintiff has raised a "potential time bar to plaintiff's ability to refile after dismissal" and "the lack of prejudice to the Defendant" as reasons justifying a Fed. R. Civ. P. 4(m) extension.[33]

The factor which seems to be emphasized most in the case law construing Fed. R. Civ. P. 4(m) is the statute of limitations factor:  particularly, whether the applicable statute of limitations would bar refiling the action if the case were dismissed.  *See Elide Fire*, 2022 WL 672485, at *5; *Espinoza*, 52 F.3d at 842.  Per Fed. R. Bankr. P. 4007(c), the deadline for a creditor to file a nondischargeability action based on Sections 523(a)(2), (a)(4), and (a)(6) is "60 days after the first date set forth the § 341(a) meeting of creditors."  As applied in this Adversary Proceeding, the deadline was September 19, 2025, which was the date that the Plaintiff filed the Complaint.  (In other words, the Plaintiff inexplicably waited to the deadline to initiate this Adversary Proceeding.)  Given the foregoing, if the Court dismisses this Adversary Proceeding, the Plaintiff likely will be barred from prosecuting his Section 523(a)(2), (a)(4), and (a)(6) claims.  That result militates strongly in favor of a permissive extension of time under Fed. R. Civ. P. 4(m).

Furthermore, the Court ascertains no prejudice to the Defendant if the Court allows the Plaintiff to correct the service deficiencies.  *Cutuli v. Elie (In re Cutuli)*, 13 F.4th 1342, 1347 (11th Cir. 2021) ("initial failure to serve a fresh summons upon Cutuli's attorney did not cause Cutuli any prejudice").  And the length of delay in proper service of process, while troubling, is not as long or as significant as in many cases in which plaintiffs were denied a Fed. R. Civ. P. 4(m) extension.

The foregoing brings the Court to another consideration: whether the Plaintiff has stated any plausible claims for relief against the Defendant.  *Sullivan v. Univ. of Kan. Hosp. Author.*, 884 Fed. Appx 43, 53 (10th Cir. 2021) (unpublished) (affirming denial of permissive extension of time where district court concluded that a permissive extension of time "was unwarranted because Mr. Sullivan failed to state any plausible claims for relief.").  Based on the allegations in the Complaint, the Court ascertains that the Plaintiff has pled potentially plausible claims under Sections 523(a)(2), (a)(4), and (a)(6).

Additional points counseling in favor of a Fed. R. Civ. P. 4(m) extension include that: the Plaintiff did make some efforts (albeit insufficient) to effect service of process; the Defendant had timely actual notice of the Complaint; and the Debtor's Counsel also had actual notice of the Complaint on the date it was filed.

Although the issue is close, having considered the facts, governing law, and the totality of the circumstances, the Court determines that this Adversary Proceeding should not be dismissed.  Instead, a permissive extension of time under Fed. R. Civ. P. 4(m) for the Plaintiff to complete proper service of process is warranted.  Overwhelming bankruptcy case law construing similar service issues (particularly involving Fed. R. Bankr. P. 7004(g) and Fed. R. Civ. P. 4(m)) further bolsters the Court's decision.  *See e.g. Cutuli*, 13 F.4th at 1346-48 (affirming Fed. R. Civ. P. 4(m) permissive extension in

---

[33]    Docket No. 18 at 4.

context of bankruptcy nondischargeability action based, in part, on expiration of the statute of limitations); *Long,* 677 B.R. at 106 (even absent of showing of good cause, court *sua sponte* granted Fed. R. Civ. P. 4(m) extension because "Debtor and Debtor's attorney had actual notice of this adversary proceeding" and there was no prejudice to defendant); *Menges*, 337 B.R. at 194 (granting permissive extension of time to effect proper service under Fed. R. Civ. P. 4(m) because of lack of prejudice to defendant, actual notice of defendant and counsel, and prejudice to plaintiff by expiration of limitations period for Section 523(a)(15) claim); *Clune Co., LLC v. Johnson (In re Johnson)*, 2011 WL 482837, at *4 (Bankr. D. Kan. Feb. 7, 2011) (similar); *Collision Cntr. Of Tulsa, Inc. v. Newell (In re Newell),* 2008 WL 185789, at *2 (Bankr. N.D. Okla. Jan. 18, 2008) (similar).

## V.     Conclusion.

For the foregoing reasons, the Court DENIES the Motion to Dismiss.

Further, pursuant to Fed. R. Civ. P. 4(m), the Court ALLOWS a permissive and final 30-day opportunity for the Plaintiff to properly serve both the Defendant and the Debtor's Counsel with legal process.  During this time, the Plaintiff will need to obtain the issuance of a new alias summons (a Fourth Summons) from the Clerk of Court. Further, the Plaintiff will need to properly serve the Defendant and the Debtor's Counsel with the new alias summons and Complaint under Fed. R. Bankr. P. 7004(a) and Fed. R. Civ. P. 7004(g).  Such service of process must be completed within the time frame set forth in Fed. R. Bankr. P. 7004(e).  And, the Plaintiff will need to promptly submit a new proof of service under Fed. R. Civ. P. 4(l).  All of the foregoing must be completed within thirty days from the date of this Order.[34]  If service of process is not properly effected on both the Defendant and the Debtor's Counsel, the Complaint will be dismissed without prejudice per Fed. R. Civ. P. 4(m).

DATED this 29th day of May, 2026.

BY THE COURT:

Thomas B. McNamara
Thomas B. McNamara
United States Bankruptcy Judge

---

[34]     Although the Court recognizes that Plaintiff eventually properly served the Defendant with the Second Summons and Complaint, that alone was insufficient because of the Plaintiff's failure to serve the Debtor's Counsel under Fed. R. Bankr. P. 7004(g).  Service of process on the Defendant and the Debtor's Counsel should be performed contemporaneously.  Otherwise, if there is a significant gap in the time of service, confusion is created as to the deadline for the Defendant to respond.  Therefore, under the circumstances of this Adversary Proceeding, confusion will be reduced if the Plaintiff starts again and tries to properly serve both the Defendant and the Debtor's Counsel at the same time.